# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| ANTHONY RAY FISHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:11-CV-26 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Anthony Ray Fisher ("Fisher") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits, ("DIB") under the Social Security Act, ("Act"), 42 U.S.C. §§ 401-433.

Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Fisher's motion for summary judgment (Dkt. # 18), and **GRANTING** the Commissioner's motion for summary judgment (Dkt. # 22).

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.

2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Fisher failed to demonstrate that he was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Fisher bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005)

(citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Fisher was born on January 17, 1974 (Administrative Record, hereinafter "R." 37), and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c). Fisher's date last insured is December 31, 2011, and thus, he must show that his disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a).

Fisher completed high school. (R. 38.) Fisher was last employed from August 2005 until May 2007 as a steel-fitter and crane operator for a steel company. (R. 44-46.) He left this position in May 2007, due to a back injury. (R. 42.) Fisher was previously employed from May 2004 to August 2005 as a ditch digger for a utility company, and from 1993 to 2001 loading trucks and sorting packages for UPS. (R. 44-46.) The vocational expert classified Fisher's past work as heavy and unskilled/semi-skilled work. (R. 66.)

3

Fisher reported that during the relevant period, he was in constant pain, and had difficulty walking, lifting, squatting, bending, standing, reaching, sitting, kneeling, and climbing stairs. (R. 185-88.) He reported that his daily activities included helping his children get ready for school, performing light cleaning and laundry, caring for his pets, and watching television. (R. 180-84.) Fisher reported that he is able to prepare his own meals, take care of his personal grooming, grocery shop, pay bills, and ride a lawn mower. (R. 40-41, 180-81.) Fisher does not drive because his medications make him drowsy. (R. 183.)

## Claim History

Fisher filed for DIB on November 16, 2007, claiming that his disability began on May 29, 2007, due to back pain, depression, and asthma. (R. 136.) The state agency denied his application at the initial and reconsideration levels of administrative review. (R. 93-100.) On November 25, 2009, ALJ Robert S. Habermann held a hearing to consider Fisher's disability claim. (R. 32-34.) Fisher was represented by counsel at the hearing, which included testimony from vocational expert John Newman. (R. 35-90.)

On December 16, 2009, the ALJ entered his decision denying Fisher's claim for DIB. (R. 7-28.) The ALJ found that Fisher has severe impairments of degenerative disc disease of the lumbar spine with disc bulging and slight scoliosis, obesity, and depression, and non-severe impairments of GERD, asthma, headaches and right-hand pain. (R. 19-20.) Considering these impairments, the ALJ found that Fisher retained the RFC to perform a limited range of sedentary work, with a moderate reduction in his concentration, persistence, and pace, requiring him to think about his problems for ten seconds at a time at a rate of no more than ten times in any given hour, but not abandon his tasks, and that Fisher can complete a full workday. (R. 22.) The

ALJ determined that Fisher was not capable of performing his past relevant work. (R. 27.) However, given the evidence obtained from the vocational expert at the administrative hearing, the ALJ found that Fisher can perform work, such as assembler, cashier and packer, which exists in significant numbers in the national economy. (R. 28.)

After the ALJ's decision, Fisher submitted to the Appeals Council medical records from his primary care physician, Jay Sailer, M.D., dated October 2008 and March 2009, which the Appeals Council made part of the record. Fisher later submitted to the Appeals Council records from his pain management specialist, Robert J. Audet, M.D., dated January 25, 2010 through August 16, 2010, which the Appeals Council did not make a part of the record. On June 15, 2011, the Appeals Council denied Fisher's request for review. (R. 1-6.) This appeal followed.

## ANALYSIS

Fisher argues that 1) the ALJ erred by improperly assessing his pain and credibility; 2) the ALJ erred by failing to consider the effect of Fisher's obesity on his functional limitations; and 3) the case should be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of medical records submitted after the ALJ's decision.

### Pain and Credibility Determination

Fisher argues that the ALJ erred by failing to assign substantial credibility to Fisher's testimony that he suffers from disabling pain. Fisher testified at the hearing that he suffers from dull, throbbing, aching back pain every day (R. 50-51). Pain medications help subdue his pain, but cause drowsiness, upset stomach and constipation. (R. 52, 55, 58.) Fisher testified that he suffers from headaches one to two times a week, for about two to three hours at a time. (R. 55.)

Fisher claims that he lies down to rest approximately five hours during the day, and has one "good day" per week when he goes outside of his house. (R. 41, 56-57.)

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Fisher's subjective allegations of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Fisher met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Fisher's ability to work. Id. at 594-95.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

In this case, the ALJ recognized that Fisher suffers from severe impairments that cause him to experience pain. As the ALJ noted in his opinion, the issue is not whether Fisher has pain, but whether that pain is so severe as to be disabling. (R. 26.) The ALJ found that Fisher's statements that he suffers from disabling pain are not entirely credible and are not supported by the degree of medical treatment he received, the findings made on examination, and the reports of the reviewing, treating and examining physicians.

6

The ALJ noted that Fisher has had low back pain for a period of eleven years due to a previous back injury, and that he re-injured his back in January 2007. (R. 23.) The objective medical evidence does not support Fisher's claim that his pain is disabling. Fisher's clinical exams generally revealed tenderness in the low back, a slightly antalgic gait, and pain with flexion and extension. (R. 405, 407, 409, 411, 413, 415, 418, 420.) At the same physical exams, Fisher also had normal strength in his extremities, normal or slightly reduced range of motion in his lower extremities, no sensory or motor loss, and no muscle wasting. (R. 405, 407, 409, 411, 413, 415, 418, 420.) An MRI taken on April 23, 2007, revealed moderate to marked degenerative changes at L5-S1, and mild degenerative changes at L3-4 and L4-5 with some disc bulging. (R. 334, 347.) The MRI results showed no nerve impingement, spinal stenosis, or herniated discs. (R. 334, 347.)

Fisher's treating physician, Dr. Audet, noted on multiple occasions that Fisher's back pain was controlled with medication. (R. 405, 413.) See Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986)(if a symptom can be reasonably controlled by medication or treatment, it is not disabling.) Dr. Audet further expressed his opinion that Fisher could work in a position less physically demanding than his past employment performing heavy work for a steel company. Specifically, on April 22, 2008, Dr. Audet noted that Fisher's back pain was "under control" with medication, and Fisher was "very pleased." (R. 413.) On May 20, 2008, Dr. Audet stated, "after the pain medication kicks in and he is able to walk around a bit he is able to function almost normally as long as he doesn't do too much physical labor." (R. 415.) Dr. Audet further suggested that Fisher go back to school, and change the type of work that he has been doing which was "too physically hard" on his low back. Fisher agreed that "changing his profession

7

may allow him to experience a different career." (R. 415.) On July 6, 2009, Dr. Audet stated, "[a]s long as [Fisher] continues to go easy on his back he is able to tolerate the medication and able to live a fairly normal life but as soon as he increases his activity level the back pain flares up." (R. 422.)

The ALJ's finding that Fisher can perform sedentary work is also supported by the findings of the consultative examiner and two state agency physicians that Fisher could perform a range of light work. (R. 277-283, 298-304, 427.) No treating, examining or consulting physician found that Fisher's pain prevented him from performing some level of substantial gainful activity, and nothing in Dr. Audet's records indicates that Fisher cannot perform the scope of work identified in the RFC.

The ALJ does not assert that Fisher is pain free. On the contrary, the ALJ recognizes that Fisher suffers from severe conditions that greatly limit his ability to function. The issue, however, is not whether Fisher has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent him from performing the unskilled, sedentary jobs identified by the vocational expert. After a thorough evaluation of the evidence in the record, the ALJ found that, due to his impairments, Fisher is restricted to performing a range of sedentary work. The RFC, which the ALJ developed after considering the whole record, specifically accounted for Fisher's "generalized pain in his back/legs/right hand, headaches, fatigue, occasional depression, and side effects from his medication," by including a moderate reduction in Fisher's concentration, persistence, and pace that would require him to "think about his problems for about ten seconds at a time at a rate of no more than ten times in any given hour." (R. 22.) The ALJ's decision reflects a comprehensive consideration of the functional limitations

8

caused by Fisher's impairments and resulting pain. Affording these findings great weight, which I am required to do, I find that substantial evidence supports the ALJ's credibility determination.

## Obesity

Fisher argues that the ALJ failed to analyze the functional effects of his obesity at steps four and five as required by SSR 02-1p. The regulations require that the ALJ consider a claimant's obesity at steps two through five of the sequential disability evaluation. SSR 02-1p; see also Barr v. Astrue, 2011 WL 3420844, at *5-*6 (W. D. Va. Aug. 4, 2011) adopted by 2011 WL 3847154 (W.D. Va. August 30, 2011). There is no requirement in the regulations that the ALJ include a lengthy or precise analysis in the opinion. See Richards v. Astrue, 2012 WL 5465499, at *11 (W.D.Va. July 5, 2012).

At step four of the disability analysis, the ALJ is required to consider the impact that obesity has on a claimant's RFC, because obesity may cause serious limitations in any of the exertional functions, including sitting, standing, walking, lifting, pushing and pulling. SSR 02-1p. The ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005). Similarly, courts in this district have approved of an ALJ's reliance on the opinions of physicians who have considered the claimant and his obesity for purposes of satisfying SSR 02-1p. Martin v. Barnhart, 2012 WL 663168, at *5 -*6 (W.D. Va. Feb. 29, 2012) report and recommendation adopted sub nom. Martin v. Astrue, 2012 WL 994903 (W.D. Va. Mar. 23, 2012); see e.g., Phelps v. Astrue, 2010 WL 3632730, at *6 -*7 (W.D. Va. Sept. 9, 2010)(finding that an ALJ properly considered claimant's obesity because he found it severe and relied on opinions of two doctors who examined the claimant and noted her

9

height and weight); Davis v. Astrue, 2010 WL 424144 (W.D. Va. Feb. 3, 2010) (finding that an ALJ properly considered claimant's obesity by relying on a medical advisor, who had considered claimant's marked obesity, contemporaneous medical reports and clinical notations noting the lack of significant complaints in assessing claimant's RFC); Bumbrey v. Astrue, 2008 WL 5210378 (W.D. Va. Dec.11, 2008) (finding that the ALJ explicitly noted and discussed claimant's obesity and related impairments when determining her RFC).

In this case, the ALJ properly accounted for Fisher's obesity. The ALJ found that Fisher's obesity was a severe impairment. (R. 19.) The ALJ noted Fisher's height and weight, and specifically took into account the considerations required by SSR 02-01p in reaching his conclusions. (R. 22, 24.) The ALJ further relied upon the medical records of the doctors who treated Fisher's obesity and other medical conditions, as well as the consultative examiner, William Humphries, M.D., who found that Fisher could perform a range of light work despite his obesity. (R. 424-27.) Finally, the ALJ limited Fisher to performing a reduced range of sedentary work, which accounts for any limitations caused by Fisher's obesity.

To challenge an ALJ's obesity analysis, the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC. Matthews v. Astrue, 2009 WL 497676, at *4, n.4 (W.D. Va. Feb. 27, 2009); see also Phelps, 2010 WL 3632730, at *7. That is, Fisher must provide medical evidence establishing functional limitations not addressed in the RFC. Richards v. Astrue, 2012 WL 5465499, at *13 (W.D.Va. July 5, 2012). Here, Fisher argues that the ALJ did not account for the fact that his obesity causes him to have difficulty sleeping at night, exacerbates his back pain, and causes him to lie down during the day. (Pl. Br. in Supp. of Mot. for Summ. J. at 27.)

10

The ALJ accounted for Fisher's difficulty moving and ambulating by restricting Fisher to sedentary work. (R. 22-26.) He further accounted for Fisher's fatigue by finding that Fisher had a moderate reduction in concentration, persistence and pace. (R. 22-26.) The medical records do not demonstrate that Fisher's obesity caused significant limitations in his work activities other than those identified by the ALJ and accounted for in the RFC. Thus, the ALJ properly accounted for the limitations arising from Fisher's obesity in his RFC analysis, and relied upon medical evidence taking Fisher's obesity into account in accordance with SSR 02-1p.

### Additional Medical Evidence

Fisher submitted to the Appeals Council: 1) records from Dr. Sailer, dated October 22, 2008 and March 11, 2009 (R. 437-38), which the Appeals Council made part of the record; and, 2) records from Dr. Audet dated January 25, 2010 through August 16, 2010 (Pl. Br. in Supp. of Mot. for Summ. J., Ex. 3), which the Appeals Council did not make part of the record and returned to Fisher. Additionally, Fisher submitted as exhibits to his Brief in Support of Motion for Summary Judgment with this court: 1) records from Dr. Sailer dated April 30, 2010 through May 20, 2011; and, 2) records from Dr. Audet dated June 17, 2008 through January 3, 2012. (Pl. Br. in Supp. of Mot. for Summ. J., Ex. 2, 3, 4, 5.)

Fisher argues that the medical records presented to the Appeals Council and to the court qualify as new, material, relevant evidence that should be considered by the ALJ on remand. Specifically, Fisher argues that these records, which were not presented to or considered by the ALJ, fill gaps in the treatment record, provide objective medical findings regarding Fisher's condition, and corroborate Fisher's subjective allegations.

I will first address the records submitted to the Appeals Council. When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991.) Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

When the Appeals Council denied Fisher's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. When determining whether substantial evidence supports the Commissioner's decision, the court must review the record as a whole, including the new evidence incorporated into the administrative record by the Appeals Council. Wilkins, 953 F.2d at 96.

Upon a review of the record as a whole, I find that the records submitted to the Appeals Council are not new or material, and thus do not warrant remand for consideration by the ALJ. Fisher submitted to the Appeals Council two additional records from his primary care physician, Dr. Sailer, dated October 22, 2008 and March 11, 2009. The October 22, 2008 record states that Fisher presented to discuss Prozac, which he started taking six to seven months before, and he felt was not working. Dr. Sailer diagnosed Fisher with depression, chronic back pain, and possible Periodic Limb Movement Disorder. He prescribed Wellbutrin, Neurontin and Trazodone. (R. 438.) On March 11, 2009, Fisher presented with complaints of swelling in both legs with pain and red spots. Dr. Sailer diagnosed transient edema possibly related to diet, activity, and acute viral illness. He prescribed Lasix to treat the swelling. (R. 437.)

12

Neither of these records constitute new or material evidence that would provide a basis for disturbing the ALJ's decision in this case. The ALJ considered records from Dr. Sailer dated May 2006 through September 2007, which documented Fisher's complaints of back pain and obesity, and recommend as treatment a healthy diet, daily walking, and pain medication. (R. 334-42.) The ALJ discussed Fisher's depression in his decision, found it to be a severe impairment, and accounted for it in the RFC by including a moderate reduction in Fisher's concentration, persistence and pace. (R. 25.) Dr. Sailer's October 22, 2008 record does not indicate any additional functional limitations caused by Fisher's depression, nor does it provide any basis upon which to change the ALJ's decision. Similarly, the March 11, 2009 record contains no diagnostic tests, clinical findings, or other information that would provide a basis upon which to change the ALJ's decision.

Fisher also submitted to the Appeals Council records from Dr. Audet dated January 25, 2010 through August 16, 2010. The Appeals Council properly refused to make these treatment notes a part of the record because they were dated after the ALJ's December 16, 2009 decision, and thus, were outside the relevant time period. (R. 2.) According to the regulations: "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. §§ 404.970(b). Additionally, the regulations explain that,

> [i]f [the claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [the] right to file a new application.

20 C.F.R. §§ 404.976(b)(1). See Bowers v. Astrue, 2008 WL 2563218 (W.D. Va. June 24, 2008).

13

There is no question that these records are dated after the relevant time period. Further, the Appeals Council is not required to state specific reasons why the records do not relate back to the relevant time period. As the Fourth Circuit clarified in Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011), "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." Thus, the Appeals Council properly declined to make these treatment notes a part of the record, and returned them to Fisher.

As an alternative to granting summary judgment in her favor, Fisher requests that the court remand this case under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence provided in Exhibits 2-6 to Fisher's brief. "A claimant seeking a remand on the basis of new evidence…must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier." Wilkins, 953 F.2d at 96 n. 3.

Fisher submitted to the court: 1) records from Dr. Audet dated June 17, 2008 through April 10, 2012 (which include the records submitted to and not considered by the Appeals Council); and, 2) records from Dr. Sailer dated April 30, 2010 through May 20, 2011.

The additional treatment notes from Dr. Audet dated during the relevant time period were, for unexplained reasons, not previously submitted to the ALJ or Appeals Council. I find that these additional records from Dr. Audet do not constitute "new" and "material" evidence because they are cumulative of Dr. Audet's treatment notes considered by the ALJ.[1] These records are consistent with the records evaluated by the ALJ in terms of Fisher's complaints, Dr. Audet's findings on physical examination, and his diagnoses and treatment recommendations. These records bolster the ALJ's finding that Fisher is capable of performing a range of sedentary

---

[1] The ALJ considered records from Dr. Audet dated from January 8, 2008 through July 6, 2009.

work. For example, on July 31, 2008, Dr. Audet stated that Fisher's pain was unchanged and he was doing "well." (Pl. Br. in Supp. of Mot. for Summ. J., Ex. 2.) On August 21, 2008, Dr. Audet noted that "not doing physical labor is allowing back to calm down," and on September 11, 2008, Dr. Audet noted that Fisher's low back was "pretty much okay" with medication. (Pl. Br. in Supp. of Mot. for Summ. J., Ex. 2.)

Fisher notes that the records before the ALJ did not include the results of a discogram, dated February 18, 2009, which Fisher argues provides objective evidence of his pain. Although the discogram results were not provided to the ALJ, the ALJ considered records from Fisher's treating physicians dated after the discogram, and the ALJ specifically considered and accounted for Fisher's pain in his RFC. As a whole, the additional records submitted to the court arguably fill gaps in Fisher's treatment record; however, they do not provide a basis upon which to change the outcome of the ALJ's decision, and thus do not warrant remand under sentence six of 42 U.S.C. § 405(g).

The remaining records submitted to the court by Fisher are records from Dr. Audet and Dr. Sailer dated after the ALJ's decision. These records are outside the relevant time period and, at most, provide evidence of the subsequent deterioration of Fisher's previously non-disabling condition. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Szuback v. Sec'y, Dep't Health & Human Servs., 745 F.2d 831, 833 (3rd Cir. 1984); Cameron v. Astrue, 2011 WL 2945817 (W.D.Va. July 21, 2011). These records document Fisher's deteriorating back condition, increasing back pain, and continued obesity. There is nothing contained in the records

15

to indicate that they relate to the period of disability at issue in this case. Fisher's remaining remedy is his right to file a new application for benefits alleging disability after the date of the ALJ's opinion. See 20 C.F.R. § § 404.620(a)(2), 404.976(b)(1).

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Fisher is totally free from any distress. The objective medical record simply fails to document the existence of any physical conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Fisher's claim for benefits and in determining that his physical impairments would not prevent him from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Fisher's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

16

to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: January 29, 2013

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge